UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORWEST BANK WISCONSIN, N.A.,

                          Plaintiff,      CIVIL CASE NO. 99-40146

v.

                                               HONORABLE PAUL V. GADOLA

THE MALACHI CORPORATION, INC.,      U.S. DISTRICT COURT

                          Defendant.
_____/

**ORDER DETERMINING ENTITLEMENT TO ASSETS**

Before the Court is Receiver HealthLink Services's motion for order determining entitlement to assets, filed on July 30, 2004. The issues have been fully briefed by the two affected parties, the Trustee, Wells Fargo, and the Buyer, Extendicare Health Services.

**I.     Background**

Plaintiff Norwest Bank Wisconsin, N.A., n/k/a Wells Fargo Bank Wisconsin, N.A. (the "Trustee"), is the trustee to six separate bond financing transactions used by Defendant Malachi Corporation, n/k/a Doric Corporation, to purchase seven nursing homes. After Defendant defaulted on the financings, the Trustee filed the current suit. Subsequently, on March 31, 1999, the Court appointed HealthLink Services, LLC (the "Receiver") as the receiver of the seven nursing homes.

One of the nursing homes, the Rivers Bend Health and Rehabilitation Center located in Manitowoc, Wisconsin, was sold with the Court's approval to Extendicare Health Services (the "Buyer") pursuant to an Asset Purchase Agreement for Purchase and Sale of Real Estate and Personal Property (the "Purchase Agreement"). The sale of the nursing home was closed on

December 31, 2003. After a dispute between the Trustee and the Buyer arose from the sale, the Receiver filed the instant motion.

In its motion, the Receiver requests the Court's determination of two questions. The first question is whether the payment of real estate taxes levied in 2003 but payable in January 2004 should be borne by either the Trustee or the Buyer. The second question is whether the reimbursement of certain Medicaid funds should be made to the Trustee or the Buyer.

**II.    Analysis**

**1.    Real Estate Taxes**

The sale of the Manitowoc facility from the Trustee to the Buyer was closed on December 31, 2003, leaving $85,985.52 in property taxes for the year 2003. The Trustee and the Buyer disagree as to who must pay these property taxes, arguing that the other party is responsible for their payment. Section 2.10 of the Purchase Agreement has the following relevant provision dealing with taxes:

> Except as specifically set forth herein, general taxes for the year of closing, based on the most recent mill levy and assessment of the Project, water and sewer changes, any owner's association dues, and any other ongoing, continuous expenses of operating the Project which are customarily prorated in commercial sales of real property, shall be prorated to the Closing Date. Taxes shall be prorated on a "due date" basis. All Project income and reimbursement rights shall be prorated as of the Closing Date.

Section 2.10 of the Purchase Agreement.

Both parties disagree as to when the taxes were "due." In Wisconsin, real estate taxes levied in one year must be paid in full by January 31 of the following year. In the instant case, the real estate taxes for 2003 were levied in December 2003 and had a last payable date of January 31, 2004.

The Trustee argues that the taxes were due on January 31, 2004, the last payable date for the taxes, and thus the taxes are the responsibility of the Buyer. The Buyer argues that the taxes were due in December 2003 when the taxes were levied, and thus they are the responsibility of the Trustee.

This Court agrees with the Buyer that the taxes are to be paid by the Trustee. It is undisputed that the 2003 property taxes were levied in December 2003, creating a burden of taxation dating back to January 1, 2003. This Court is not convinced that taxes are "due" only on the last payable date. Instead, the Court finds that taxes are "due" when there is an obligation to pay them. At the time of the levy, a requirement to pay the property taxes from January 2003 to December 2003 was created. Therefore, because the 2003 property taxes were a tax burden on the Manitowoc facility before the date of closing, the taxes must be borne by the Trustee.

**2.     Medicaid Reimbursement**s

In Wisconsin, Medicaid payments and their rates run from July 1 of one year to June 30 of the next year. When the Manitowoc nursing home was sold in December 2003, interim Medicaid rates were in effect. In 2004, the Medicaid rates were adjusted to a higher level than the interim rates. Because of the rate adjustment, the Manitowoc facility was entitled to a retroactive rate increase for the time period between July 1, 2003 and December 31, 2003. In May 2004, the State of Wisconsin issued a check to the Manitowoc facility, which included at least $145,430.30 for the Medicaid reimbursement. The Buyer deposited the funds, and claims that it is entitled to the funds pursuant to the terms of the Purchase Agreement. The Trustee claims that the Medicaid funds do not fall under the term "underpayment recoveries" found in Section 7.4 of the Purchase Agreement and that it is entitled to the funds.

The relevant provision of the Purchase Agreement, Section 7.4, states:

> Buyer acknowledges that it is purchasing the Project subject to any Medicare and/or Medicaid reimbursement overpayment claims, charges or recoveries, (collectively "Medicare/Medicaid Recoveries") relative to operation of the Project prior to the Closing, whether in the form of payments made by Buyer or deduction from or curtailment of such reimbursements otherwise payable to Buyer. The Trustee shall have no obligations with respect to any Medicare/Medicaid Recoveries. The Trustee and the Receiver acknowledge that Buyer is acquiring the right to pursue any Medicare and/or Medicaid reimbursement underpayment claims, and that neither the Trustee nor the Receiver shall have any rights with respect to any underpayment recoveries obtained by Buyer.

Section 7.4 of the Purchase Agreement.

This Court finds that the Buyer is entitled to the $145,430.30 Medicaid reimbursement, as the Medicaid reimbursement is an "underpayment recover[y]" within the meaning of Section 7.4. Based on the clear language of the Purchase Agreement, the risks associated with any Medicare or Medicaid retroactive rate adjustment that may result in reimbursement overpayment or underpayment claims after the sale of the Manitowoc facility are placed squarely on the Buyer. Section 7.4 states that the Trustee has no obligations with respect to overpayment recoveries exacted from the Buyer, nor does the Trustee "have any rights with respect to any underpayment recoveries obtained by the Buyer."  Section 7.4 of the Purchase Agreement. The fact that the Buyer did not initiate the claim for the underpayment reimbursement is of no moment, and does not affect the Buyer's entitlement to the Medicaid reimbursement underpayment.

In the Receiver's Reply Brief, filed on October 7, 2004, the Receiver argues that regardless which party the Court determines should receive the Medicaid reimbursement, the Receiver is entitled to a percentage of the amount as compensation for its duties, pursuant to the terms of the

Receivership Order. Considering the plain language of Section 7.4 of the Purchase Agreement, stating that "neither the Trustee nor the Receiver shall have any rights with respect to any underpayment recoveries obtained by Buyer," this Court finds that the Receiver is not entitled to a percentage of the Medicaid reimbursement.

### III.   Conclusion

**ACCORDINGLY, IT IS HEREBY ORDERED** that the Receiver's Motion for Determining Entitlement of Assets [docket entry 341] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Trustee Wells Fargo is responsible for the payment of the 2003 real estate taxes and is required to reimburse the Buyer Extendicare Health Services, Inc. for any amounts expended to satisfy this tax obligation.

**IT IS FURTHER ORDERED** that the Buyer Extendicare Health Services, Inc. is entitled to any Medicaid reimbursements for rate increases for the services rendered at the Manitowoc facility.

**SO ORDERED.**

Dated:  February 21, 2006               s/Paul V. Gadola
                                        HONORABLE PAUL V. GADOLA
                                        UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on  February 21, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

 Leonora K. Baughman; Bradley H. Darling; Boyd A. Henderson; Richardo I. Kilpatrick; Kay S. Kress; Eric H. Lipsitt; Richard G. Mack; Eric T. McCormick; Eric J. Meier; Judith C. Miller; Julia C. Pidgeon; Stuart J. Rice                               , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:    Patrick J. McLaughlin; Gregory T. Stewart; James M. Hammond; Nicole Y Lamb-Hale; Gregory R. Schermerhorn; Thomas B. Carpenter; Ross A. Anderson.

s/Ruth A. Brissaud
Ruth A. Brissaud, Case Manager
(810) 341-7845