UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORWEST BANK WISCONSIN
NATIONAL ASSOCIATION,
as Trustee,

        Plaintiff,

v.

THE MALACHI CORPORATION, INC.,

        Defendant.
_____/

Case No. 99-40146

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING (D/E # 649) RECEIVER'S MOTION FOR SUMMARY JUDGMENT ON POST-FILING CLAIMS OF HP/MANAGEMENT GROUP, INC.**

Receiver Yeo & Yeo ("Yeo") moves for summary judgment regarding all post-filing claims of HP/Management Group, Inc. ("HP"). Yeo seeks to have all such post-filing claims equitably subordinated and treated in the same manner as pre-filing claims. For the reasons stated below, the Court will deny summary judgment and declines to subordinate them.

**FACTUAL BACKGROUND**

This is a receivership case brought under the Court's diversity jurisdiction. In the 1990's, The Malachi Corporation, Inc. ("Malachi") bought or constructed several nursing homes located in Michigan and Wisconsin using funds from bonds issued by the communities in which the homes were located. Norwest Bank Wisconsin, now known as

1

Wells Fargo Bank, N.A. ("Wells Fargo"), is the trustee for the bondholders. Malachi subsequently defaulted on the mortgages that secured the loans for the bondholders.

Malachi and Wells Fargo stipulated to the appointment of a receiver by a court upon default, as provided for in the mortgage agreements. They applied to this Court for a receiver and the Court appointed HealthLink Services, LLC ("HealthLink") as receiver.[1] HealthLink in turn hired HP to manage the nursing homes portion of the receivership.

The Court issued an order prohibiting the litigation of any claim against the receivership estates except in the form of a claim filed in this Court. A number of such claims have been filed, and are waiting to be adjudicated until the final assets of the estates can be liquidated. It appears that each of the receiverships' assets will be insufficient to pay all claims.

Claims against the receivership fall into two categories: pre-filing and post-filing claims. Pre-Filing claims are those claims against the receivership estates or Malachi incurred prior to March 31, 1999 and filed under the Court's order at docket no. 118 approving the first claims procedure. Post-filing claims are those claims against the receivership estates arising after March 31, 1999 and filed under the Court's order at docket no. 517 approving a post-filing claims procedure. It appears that there are insufficient funds to pay pre-filing claimants and adjudication of those claims has been tolled pending further order of the Court.

---

[1] HealthLink was later removed by the Court and Yeo was substituted as the new receiver.

Because each nursing home was a security for a separate set of bondholders, the Court ordered that the receiver was to maintain six separate receivership estates,[2] and that any money coming into the possession of the receiver, not expended for purposes authorized by the order, were to be held by the receiver in interest-bearing accounts set up for each separate facility, for the benefit of the bondholders and other creditors of the individual receivership estates. That order also included identical provisions for authorization to employ HP to assist in managing each receivership estate. Despite this order, HP proceeded to operate all seven facilities as a single concern, often diverting funds from the estates that were showing a profit in order to shore up the homes that were unprofitable. Wells Fargo sued HP on behalf of the profitable homes to recover the diverted funds. Yeo was later substituted as plaintiff in that case. *See Yeo & Yeo, P.C. v. HP/Management, Inc.*, No. 2:03-cv-40340. (E.D. Mich.).

By now, the Court has resolved case no. 03-40340 by entering final judgment for Yeo, as receiver, in the amount of $2,762,791. The Court has also denied HP's request for setoff or recoupment in an amount equal to the money owed it by some of the receivership estates for management services previously rendered. The Court declined to allow HP to obtain a dollar-for-dollar recovery of the amounts owed, and instead ordered that if HP sought compensation for management services, it had to seek it in the receivership proceeding through the post-filing claims procedure just like every other post-filing claimant.

---

[2] Two of the Wisconsin facilities – Gillette and Wautoma – were treated as one receivership estate.

## PROCEDURAL POSTURE

On June 3, 2008, HP filed seven separate post-filing claims (one for each nursing home facility), seeking compensation for management services rendered all seven facilities. Docket nos. 544-550. Yeo filed objections to these claims on multiple grounds including breaches of duty and misconduct, unclean hands, and violation of court orders. Docket no. 561.

Currently before the Court is Yeo's motion for summary judgment requesting that HP's post-filing claims be equitably subordinated, and treated in the same priority as pre-filing claims. Yeo asks that HP's post-filing claims not be adjudicated in the post-filing claims procedure, but be determined with other the pre-filing claims, if enough available funds exist at that time. If granted, HP's claims for compensation would likely never be adjudicated and paid since it appears that there are not enough receivership assets to pay *any* of the pre-filing claims.

## DISCUSSION

I.  Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the

nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a summary judgment motion, the court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The court is not required or permitted to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

II.  Equitable Subordination Principles

As its title suggests, the doctrine of equitable subordination is an equitable one that allows a court to subordinate one creditor's claim to those of other creditors. The doctrine has been enacted in the U.S. Code at 11 U.S.C. § 510(c)(1) and has developed through the years by courts that have acted in bankruptcy and receivership settings. Section 510(c) provides in relevant part: "... after a notice and hearing, the court may[,] under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim ...."  11 U.S.C. § 510(c)(1).

The Sixth Circuit has adopted a three-part standard for adjudicating a request for equitable subordination: (1) the claimant must have engaged in some type of inequitable conduct; (2) the misconduct must have resulted in injury to other creditors of the receivership or conferred an unfair advantage on the claimant; and (3) equitable subordination of a claim must not be inconsistent with provisions of Bankruptcy Act. *In re Autostyle Plastics, Inc.*, 269 F.3d 726, 744 (6th Cir. 2001). Satisfaction of this three-part standard means only that a court is *permitted* to equitably subordinate a claim, not that it is *required* to do so. *Id.*  Like other equitable remedies, equitable subordination is an

extraordinary one, and should be applied only in limited circumstances. *Id.* at 745. The doctrine is remedial rather than penal, and as such, a claim should be subordinated only to the extent necessary to offset the harm suffered by the debtor and/or its creditors as a result of the inequitable conduct. *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 234 (3d Cir. 2003); *In re Herby's Foods, Inc.*, 2 F.3d 128, 131 (5th Cir. 1993) *In re Mobile Steel Co.,* 563 F.2d 692, 701 (5th Cir. 1977). "For example, if a claimant guilty of misconduct asserts two claims, each worth $10,000, and the injury he inflicted on the [receivership estate] or its creditors amounted to $10,000, only one of his claims should be subordinated. Since the exercise of the subordination power is governed by equitable principles, and equitable relief is remedial rather than penal, subordination of the other claim would be improper. " *Mobile Steel*, 563 F.2d at 701 (citations omitted).

For subordination to properly offset the harm suffered by the receivership and/or its creditors, or to level the playing field after the claimant has procured for itself an unfair advantage over other creditors, it is necessary to identify the harm or unfair benefit obtained. "The type of harm to creditors sufficient for equitable subordination is difficult to define, and depends on the particular facts of the case." *In re Beverages Int'l Ltd.*, 50 B.R. 273, 283 (Bankr. D. Mass. 1985). Harm may consist of a creditor's reliance on management's mischaracterizations of a receivership's financial condition, or the continued buildup of unsecured debt caused by the manipulation of the receivership estate by the claimant to his own advantage. *Id.* Or, a movant can demonstrate harm by proving that a specific creditor was deceived or otherwise lured into extending additional credit to the receivership estate. *See Herby's Foods*, 2 F.3d at 133; *see also In re Multiponics, Inc.*, 622

6

F.2d 709, 721 (5th Cir. 1980) (inaccurate financial picture of bankrupt created by claimants substantially increased risk at which monies were lent). Similarly, an increase in trade credit exposure of outside creditors and reduction of the ultimate dividends in liquidation available to creditors can establish harm. *Herby's Foods*, 2 F.3d at 134. Good faith on the part of the claimant does not negate the harm or lessen the advantage gained by the claimant. *Id.*

In *Herby's Foods*, for example, the Fifth Circuit affirmed the bankruptcy court's subordination of an insider's claim based on a finding that the insider increased the unsecured debt of the bankrupt company by $3,700,000, which greatly increased other creditors' exposure. This increase in unsecured debt, along with the misconduct of the claimants in placing themselves in higher priority warranted subordination of its claims. *Herby's Foods*, 2 F.3d at 133-34.

In demonstrating harm, the moving party must demonstrate with some specificity how the misconduct of the claimant injured the creditors of the receivership or resulted in an unfair advantage over other creditors. *Cf. Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims*, 160 F.3d 982, 991 (3d Cir. 1998) (subordination may be appropriate but only if supported by findings that justify the remedy chosen with reference to equitable principles). The Court must attempt to identify the nature and extent of the harm it intends to remedy in a manner that will permit judgment to be made regarding the proportionality of the remedy to the harm suffered. *Id.* The party seeking subordination need not put a specific "price tag" on the loss suffered by those to benefit from the remedy since such quantification may not always be feasible. *Id. Some* identification of the nature and extent of the harm, however, is required in order for the Court to craft an appropriate

remedy for the harm and in order that subordination is granted only "to the extent necessary to offset the harm." *Mobile Steel*, 563 F.2d at 701.

III. <u>Analysis</u>

With these principles in mind, the Court addresses Yeo's request for subordination of HP's post-filing claims. For the reasons stated below, the Court finds that Yeo has not satisfied its burden of demonstrating the absence of any genuine issue of material fact with respect to the second element of equitable subordination – harm to the receivership estate or other claimants.[3] Accordingly, Yeo's motion for summary judgment is denied.[4]

Yeo argues that the inequitable conduct of HP has resulted in harm to the creditor body of the receivership, and also that HP's conduct has given it an unfair advantage over other creditors.[5] Yeo attempts to establish harm or unfair advantage in a number of ways. First, Yeo argues that by diverting funds from four of the functioning nursing home facilities to the other three failing ones, HP created an increased likelihood that creditors of the four

---

[3] Because the Court denies the request for equitable subordination based on Yeo's insufficient demonstration of harm or unfair advantage, the Court need not address the other two elements of the remedy, or HP's argument that the claim of equitable subordination is *res judicata.*

[4] Importantly, in denying Yeo's motion for summary judgment, the Court takes no position on the merits of Yeo's objections to HP's post-filing claims. The Court simply holds that HP's post-filing claims will not be subordinated and treated in the same manner as pre-filing claims. The Court will consider Yeo's objections at a later date.

[5] Yeo's arguments assume that in arriving at an equitable division of the receivership estates, the Court will be required to rigidly pay all claims against the estates in the order in which the Court directed the *receiver* to compensate creditors during the pendency of the estates, *i.e.*, HP gets first priority. But, as the Court noted in its order granting Yeo summary judgment against HP in case no. 03-40340, the question of priority remains an undecided one that the Court will consider at a later time. Opinion and Order of April 23, 2009, case no. 03-40340, docket no. 108, p. 8 n.2. For purposes of this motion, however, the Court will assume Yeo's assumption is correct.

profitable estates would not be paid. It states that those diverted funds are no longer available to satisfy the creditors of those separate receivership estates. Pl. Br. at 17.

Yeo's attempt to establish harm in this respect is insufficient. To the extent creditors of the four facilities whose funds were diverted were harmed by the diversion, they have been compensated for that harm by an award of money damages against HP. On November 20, 2009, this Court, in case no. 03-40340, awarded final judgment in Yeo's favor in the amount of $2,762,791. That is the amount the Court found, and HP admitted, to have been diverted from the four profiting facilities. Accordingly, to the extent creditors of the four receiverships at issue in case no. 03-40340 were harmed by the inequitable conduct of HP, they have been made whole again by the money judgment awarded in that case. Subordination of HP's claims for purposes of offsetting any harm in this respect is therefore is not warranted.

Although it is not entirely clear from the briefing, Yeo also apparently claims that HP's conduct in shoring up the failing facilities with funds from the profitable ones, thereby mischaracterizing the financial condition of the failing estates, deceptively lured new creditors into extending additional credit to those facilities.[6] This behavior allegedly reduced the likelihood that both new and old creditors would be paid once the assets of the estates were liquidated and paid out in the adjudication of all post-filing claims. Pl. Br. at 17. To be sure, this type of harm can satisfy the second element of equitable subordination. *See Herby's Foods*, 2 F.3d at 133; *Beverages*, 50 B.R. at 283. But, in this

---

[6] The Court finds Yeo's argument is unclear because, in support of its argument, Yeo simply cites legal principles without any application of the principles to the facts in this case. It is not clear, therefore, that Yeo seeks to have these principles applied here. The Court assumes that it does, and considers the argument here.

case, the Court finds that Yeo has not sufficiently demonstrated the extent of the harm to creditors, if any, from this conduct. It is not entirely clear at this juncture whether and, if so, to what extent, any new creditors were lured into extending credit to the receivership estates due to the financial picture painted by HP. Yeo says it happened, but has not substantiated its allegation by pointing to any facts in the record to conclusively demonstrate it – and it is well settled that Yeo has this burden under Rule 56.

In *Herby's Foods* the party seeking subordination demonstrated harm by providing undisputed evidence that the aggregate size of the bankrupt's unsecured debt to trade creditors increased by $3.7 million and the average number of days outstanding for trade payables increased almost eleven-fold between the time the insider acquired the bankrupt and the bankrupt's filing for bankruptcy. 2 F.3d at 133. Based on this evidence, the bankruptcy court found the insider harmed outside creditors as a whole by significantly increasing their trade credit exposure and by reducing their ultimate dividend in the liquidation. *Id.* at 134. In this case, however, no analogous evidence has been submitted that would permit the Court to make a similar finding that would warrant subordination. The absence of a demonstration of the extent of such harm, if any, also prevents the Court from subordinating HP's claims only "to the extent to which" other creditors were harmed. Accordingly, the Court finds that in this instance, Yeo has failed to meet its burden of establishing this specific type of harm.

Finally, Yeo claims that the inequitable conduct of HP meets the "alternative grounds" for equitable subordination, of conferring an unfair advantage on HP. Pl. Br. at 17. Specifically, Yeo argues that HP's diversion of funds allowed it to keep the failing facilities open, which in turn allowed it to make substantial claims against all of the estates

10

for fees and other compensation of payment associated with managing the estates. In support of its claim, Yeo directs the Court's attention to attached "summaries" submitted by HP as to the failing facilities which purport to demonstrate that HP made substantial claims for management and related fees it was able to seek as a result of artificially keeping the failing nursing homes in operation. On this front, HP "emphatically denies that it artificially kept any of the nursing homes operating any longer than the time the Receiver and Wells Fargo decided to sell them." Def. Br. at 16. It argues that the reports it prepared informed the receiver and Wells Fargo of the financial and operational conditions of each facility. Wells Fargo and the receiver were aware that three of the facilities were failing, and the question of whether or not they should be closed before being sold was discussed openly between the principals of Wells Fargo, the receiver, and HP. Additionally, HP states that other problems outside the control of HP delayed the sale of the failing facilities. *Id.* Therefore, HP denies that it harmed the estates in this way.

The Court finds that Yeo has not met its burden of establishing the absence of a genuine issue of material fact with respect to whether HP artificially kept the failing nursing homes operating for the sole purpose of retaining its managerial role, allowing it to continue to claim management expenses from the receivership estates. Although the Court has previously found (in case no. 03-40430) that HP violated the Court's order that it not commingle the funds of the separate receivership estates, the Court has not determined that HP did so with the sole motivation or purpose of continuing the estates so that it could perpetuate its role as manager. The summaries which Yeo cites to do not establish this fact. They simply demonstrate the expenses incurred in operating the failing facilities; not

11

that the diversion of funds was done to allow HP to continue as manager, as opposed to doing so for the purpose of getting the best sale price for the facilities, as HP claims.

Additionally, Yeo has not conclusively demonstrated that the diversion of funds from profitable facilities to unprofitable ones, once the diverted funds are returned to the profitable ones through the judgment entered in case no. 03-40340, actually decreased the total value of all assets to be liquidated and divided between post-filing claimants. That is, Yeo has not demonstrated that HP's perpetuation of the failing facilities actually gave HP an unfair advantage over other creditors by allowing it to claim first-priority for expenses it essentially manufactured.

Accordingly, Yeo has not established that HP conferred upon itself an unfair advantage by artificially keeping in operation the failing nursing facilities to allow it to continue to make claims for management fees and costs, and has not established the second element of equitable subordination.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that Yeo has not met its burden in demonstrating that the Court should equitably subordinate the post-filing claims of HP for management fees and costs (docket nos. 544-550). Accordingly, Yeo's motion for summary judgment will be denied.

**WHEREFORE**, it is hereby **ORDERED** that Yeo's motion for summary judgment (docket no. 649) is **DENIED.**

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
UNITED STATES DISTRICT JUDGE

Dated: December 30, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 30, 2009, by electronic and/or ordinary mail.

Alissa Greer
Case Manager